THE NEWARK AQUEDUCT COMPANY and others *v.* JAMES N. JORALEMON and others.

A. having contracted to buy a lot of land from B., and there being judgments against A., it was agreed between them that B. should make the deed to a brother of A., in trust for an infant son of A., the brother and son having no knowlegde of the transaction at the time, and that the deed should not be recorded ; and that when A. should settle with his creditors, B. should make a deed to A. A. paid the money for the lot, and B., afterwards, in the absence of A. from the State, made the deed to the brother in trust &c. and had it recorded. Subsequently C. applied to A., who was in possession of the lot, for the purchase of it, and A. agreed to sell it, and to procure a deed from the brother to C. C. requested A. to show him the title papers, but the deed to the brother could not be found, or was not produced. C. then applied to the Clerk of the County for a certificate of the title as it appeared on the records; and the Clerk's certificate, by mistake, gave the deed from B. to the brother as an absolute deed, unlimited by any trust; whereupon C. took a deed from the brother and paid the purchase money. C. had no notice of the trust, other than the constructive notice by the record.

*Held,* that C.'s title was good.

The facts stated in the bill were admitted in the answer ; the infant defendant answering by James N. Joralemon, his guardian. They are shortly as follows :

In October, 1842, James N. Joralemon agreed to buy of Lucas Carter a lot of land in Newark ; but the said James being in embarrassed circumstances, it was agreed between them, in order that the lots should be secure from the liens of judgments against James, that the deeds should be made to Samuel L. Joralemon, the brother of the said James ; and, with a view of providing against the contingency of the said lot descending to the heirs of said Samuel in case of his death, it was agreed that the deed to Samuel should be in trust for the benefit of Lewis Joralemon, an infant son of the said James. Neither Lewis nor Samuel had any knowledge of the transaction at the time ; and it was agreed that the deed to Samuel should not be put on record, but should be held by Samuel until James could find it convenient to make a settlement with his creditors, when the lot was to be conveyed by Carter to James. James gave Carter his note for the consideration money, $500 ; which he afterwards paid.

James, after making the arrangement, went to New Orleans; and during his absence Carter had the deed drawn and executed, acknowledged and recorded. The deed was to Samuel L. Joralemon, his heirs and assigns, in trust for the said Lewis, his heirs and assigns. For a long time after the deed was given it remained in James's possession; the said Samuel and Lewis still continuing ignorant that any such conveyance had been made.

In 1843, Hanford Smith, since deceased, applied to James for the purchase of all the real estate whereof he was then possessed in Clay street and on the Passaic river, in Newark, including the lot so conveyed to the said Samuel; and James agreed to sell the same to him; and that a deed should be given therefor by the said Samuel; and accordingly, at the request of James, Samuel and his wife, by deed dated January 1, 1845, in consideration of $——, paid by Smith to Samuel for the benefit of the said James, conveyed the said property to Smith, his heirs and assigns, in fee simple, unlimited by any trust, with full covenants of warranty.

Preparatory to the purchase by Smith, he requested the said James to hand him the deeds showing his title to the property about to be conveyed; but the deed for the said lot could not be found; whereupon Smith caused the records of the county of Essex to be searched; and a regular deduction of title was thereupon made out by the Clerk of said County, under his hand and seal; in which the deed from Carter to the said Samuel L. Joralemon for the said lot was noted without any qualification whatever; but appeared therein as a deed in fee simple, unlimited by any trust.

Smith afterwards sold the said property to the complainants, The President and Directors of the Newark Aqueduct Company, by deed dated April 1, 1845; and in April, 1846, the said Aqueduct Company, for the consideration of $1,000, sold to the complainants Stoudinger and Baldwin a part of the said lot.

The complainants, before their respective purchases, consulted the said certificate or deduction of title made by the Clerk; and were induced to take a deed for the property from the fact that the said certificate exhibited a clear and satisfactory title to the same in the said Samuel at the time they, respectively, pur-

chased; and supposed that an absolute and indefeasible title was conveyed to them by the said Samuel.

*F. T. Frelinghuysen* for the complainants.

No counsel appeared for the defendants.

THE CHANCELLOR.   The consideration money having been paid by James N. Joralemon, the conveyance to Samuel, in trust for the infant son of James, was voluntary; and the facts show that it was for an improper purpose.   The subsequent purchaser, Smith, who took the conveyance from Samuel, was a *bona fide* purchaser without actual notice of the trust; and the certificate of the Clerk, on the faith of which he purchased, represented the deed to Samuel to be an absolute deed, unlimited by any trust.   Smith's equity is superior to that of the infant.   His title will be established.

Decree accordingly.